**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

LISA DENDY,

        Plaintiff,

v.                                         No. 18-CV-1118-WPJ

MICHAEL J. CHARTRAND,
MICHELLE IRENE CHARTRAND,
and JANE DOES 1-10,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING NAMED DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO
## STATE A CLAIM ON WHICH THE COURT MAY GRANT RELIEF [Doc. 3]

**THIS MATTER** comes before the Court on Named Defendants' Motion to Dismiss for Failure to State a Claim on which the Court May Grant Relief. **[Doc. 3, filed December 6, 2018]**. Upon reviewing the parties' briefs and the applicable law, the motion is **DENIED**.

## BACKGROUND

On October 31, 2018, Plaintiff Lisa Dendy filed a complaint against Defendant Michael J. Chartrand, Defendant Michelle Irene Chartrand, and Defendants Jane Does 1-10. [Doc. 1.2]. Plaintiff alleges in her complaint that her cell phone number is registered in the National Do Not Call Registry[1] and that Defendants repeatedly made unwanted automated calls, or robo-calls, with prerecorded messages using an automatic telephone dialing system ("ATDS") to her phone number. [Id.]

---

[1] The National Do Not Call Registry is a registry where individuals may register their phone number to be added to the do-not-call list to prevent unwanted calls from telemarketers. *See* National Do Not Call Registry, Fed. Trade Commission, https://donotcall.gov/ (last visited Feb. 7, 2019).

Plaintiff alleges that Mr. Chartrand and Ms. Chartrand have a nationwide robo-calling scheme to telemarket cleaning and janitorial services. [Id.] Plaintiff notes that the telephone number that would make repeated calls to her cell phone number is assigned to Mr. Chartrand and Ms. Chartrand. [Id.] The complaint states that the Jane Doe defendants are agents of Mr. Chartrand and Ms. Chartrand whom make phone calls on behalf of Mr. Chartrand and Ms. Chartrand. [Id.]

Whenever Plaintiff answered any of Defendants' calls, she would hear an automated voice, and she claims that the message was identical in each call, and that when she stopped answering the calls, the robo-calls would leave a voicemail message. [Id.] Plaintiff states that the number was a New Mexico, "505" area-code number. [Id.] Plaintiff further alleges that Defendants' robo-calls gave her an option to press a number on her phone's keypad to be placed on Defendants' do-not-call list separate from the National Do Not Call Registry. [Id.] Plaintiff states that despite this, Defendants would continue to call her repeatedly. [Id.] Finally, Plaintiff expressly states that she never consented to being called by Defendants. [Id.]

Plaintiff claims in her complaint that these repeated calls from Defendants are violations of federal and New Mexico law for which she can recover damages. [Id.] Specifically, Plaintiff claims Telephone Consumer Protection Act ("TCPA") Subsection (b) and (c) violations, claims under the Unfair Trade Practices Act ("UPA") for violations of NMSA Section 57-12-22(A), (C)(1) and (2), claims for nuisance and trespass to chattels, and civil conspiracy under New Mexico law, and she seeks to hold Defendants vicariously liable. [Id.]

Defendants seek to dismiss Plaintiff's complaint because she failed to state a claim for which relief may be granted.

## STANDARD

Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss, the complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc*., 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for

these claims."). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). The degree of specificity "depends on context". *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Mr. Chartrand and Ms. Chartrand, as the only named defendants, seek to dismiss this complaint for failure to state a claim because Plaintiff uses a general label of "Defendants" at certain sections of her complaint to refer to both named defendants and the Jane Doe defendants. [Doc. 3 at 3]. They argue that this is enough to warrant dismissal of the complaint because it does not state a plausible claim and does not give each defendant, in this case Mr. Chartrand and Ms. Chartrand, proper notice. This is their sole argument. The Court disagrees with Defendants.

The stringent requirement to specifically name which defendant did what to the plaintiff is a standard that tends to apply to complex claims, such as civil rights actions. *See Collins*, 656 F.3d at 1215 (explaining that the "*Twombly* standard may have greater bite in the context of a § 1983 claim against individual government actors, because they typically include complex claims against multiple defendants[,]" and that it is "important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." (citations and internal quotation marks omitted)). This case does not have any complex claims.

Rather, the Court must determine plausibility with an analysis of the elements of the claims asserted in the complaint. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191-92 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

## I.     TCPA Claims

A TCPA claim has three elements: (1) to make any call; (2) using any ATDS or an artificial or prerecorded voice; and (3) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii); *see also Forrest v. Genpact Servs., LLC*, 962 F.Supp.2d 734, 736 (M.D. Pa. 2013) (setting out the elements of a claim under Section 227(b)); and *Breslow v. Wells Fargo Bank, N.A.*, 857 F.Supp.2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014) ("[T]o demonstrate a violation of the TCPA, the [plaintiff] need only show that [the defendant] called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice.").

Plaintiff has clearly stated that she received calls from a number assigned to Mr. Chartrand and Ms. Chartrand, and that the calls were made by either the named defendants and/or the Jane Doe defendants on behalf of Mr. Chartrand and Ms. Chartrand. Plaintiff has alleged that Defendants made the calls, but it is unclear as to who exactly made the call. Nevertheless, Plaintiff has alleged that Mr. Chartrand and/or Ms. Chartrand exerted control over the call because an ATDS was used and the calls were made on their behalf by the Jane Doe defendants. This allegation is enough to satisfy the first element. *See In re Jiffy Lube Int., Inc. Text Spam Litigation*,

847 F.Supp.2d 1253, 1258-59 (S.D.Cal. 2012); *see also Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129 (W.D. Wash. 2012).

Next, Plaintiff states that the calls were made with an ATDS because the calls were not manually made by either Mr. Chartrand or Ms. Chartrand, Plaintiff was unable to return the call to the same number that dialed her, and the messages were prerecorded and sounded artificial. [Id., ¶¶ 23, 24, 25, 29, 30, 33]; s*ee In the Matter of Rules & Regulations Implementing the Te. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 566 (2008) (stating that "the basic function of such [ATDS] equipment . . . [is] the capacity to dial numbers without human intervention."). Although unclear as to the type of ATDS equipment used, the Court can infer that an ATDS equipment was used because the calls contained prerecorded messages, these contained the same message, and the calls were not manually made. *See Voxernet LLC*, 887 F. Supp. 2d at 1130. The Court recognizes the difficulty of alleging details about an ATDS before discovery. *See id.* Consequently, at the very least, Plaintiff has stated that an artificial or prerecorded voice was used, and further details can be obtained during discovery.

Also, Plaintiff alleged that she received the calls to her cell phone number, and the Court is able to infer, by using common sense, that she is charged for the calls, which satisfies the last element that requires that the call be made "to any telephone number assigned to [. . .] cellular telephone service [. . .] for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

Moreover, Plaintiff seeks the maximum compensation for violations of the TCPA and this amount can be recovered when the violation is done willfully or knowingly. *See Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011) (the TCPA also provides a separate cause of action that "a person may recover statutory damages of $1500 for a willful or knowing violation of the

automated-call requirements, § 227(b)(3), and $1500 for a willful or knowing violation of the do-not-call-list requirements, § 227(c)(5)—even if both violations occurred in the same telephone call."). Plaintiff made a general statement that the violations of the TCPA she suffered were done willfully and/or knowingly. At this early stage of litigation, the Court finds that this is enough to state a claim under Section 227(c). *See* Fed.R.Civ.P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *see also Hashw v. Dep't Stores Nat. Bank*, 986 F. Supp. 2d 1058, 1062 (D. Minn. 2013) (finding that at early stage of TCPA litigation plaintiff can allege willfulness generally).

The Court notes that although Plaintiff does not state specific dates and the frequency of the calls, Defendants fail to argue that the lack of dates and frequency of the calls support dismissal of the claims alleged. *See Sprogis v. Suntrust Bank*, No. 6:13-CV-365-ORL-37, 2013 WL 2456090, at *2 (M.D. Fla. June 6, 2013) (finding that Defendants failed to demonstrate that the lack of dates or call frequencies warranted dismissal).

Defendants do not address how Plaintiff has failed to state a plausible claim under the TCPA and merely allege a broad argument that Plaintiff did not "specify what actions she believes the Chartrands individually took that would make them directly liable to her." This argument is not enough for Defendants to carry their burden under a 12(b)(6) standard. Therefore, Plaintiff has provided sufficient detail in her complaint to plausibly state a claim under the TCPA.

## II.    UPA Claims

The UPA states in relevant part that "[a] person shall not utilize an [ATDS] or push-button or tone-activated address signaling system with a prerecorded message to solicit persons to purchase goods or services unless there is an established business relationship between the persons and the person being called consents to hear the prerecorded message." NMSA 1978, § 57-12-

22(A) (2003). Furthermore, "[i]t is unlawful for a person to: (1) make a telephone solicitation of a residential subscriber whose telephone number has been on the national do-not-call registry, established by the federal trade commission, for at least three months prior to the date the call is made; or (2) use a method to block or otherwise intentionally circumvent a residential subscriber's use of a caller identification service pursuant to the Consumer No-Call Act." NMSA 1978, § 57-12-22(C) (2003).

Without any guidance from New Mexico case law to interpret Sections 57-12-22(A) and (C), the Court uses the previous persuasive jurisprudence, as allowed under New Mexico law, and does not restate it herein. NMSA 1978, § 57-12-4 ("It is the intent of the legislature that in construing [. . .] the Unfair Practices Act the courts to the extent possible will be guided by the interpretations given by the federal trade commission and the federal courts."). As previously explained, Plaintiff has asserted that Defendants used an ATDS with a prerecorded or artificial message. Plaintiff also asserted that these phone calls were for cleaning and janitorial services. Furthermore, she asserted that she has never been in a business relationship with Defendants and that she did not consent to hear the prerecorded message. Plaintiff also asserted that she is on the National Do Not Call Registry and that Defendants called her despite being on the registry. These circumstances indicate a violation of Section 57-12-22 (A) and (C)(1).

Moreover, Plaintiff states that although the telephone call came from a New Mexico, "505" area-code number, the call was in fact made from a non-New Mexico number via a method called "spoofing",[2] which Plaintiff alleges is a violation of Section 57-12-22(C)(2). [Doc. 1.2, ¶ 58]. Therefore, Plaintiff has plausibly claimed a violation of Section 57-12-22(C)(2).

_____

[2] "Caller ID spoofing is when a caller deliberately falsifies the information transmitted to your caller ID display to disguise their identity. Spoofing is often used as part of an attempt to trick someone into giving away valuable personal information so it can be used in fraudulent activity or sold illegally, but also can be used legitimately, for example, to

Finally, the Court notes that Defendants failed to address how Plaintiff failed to state a claim under the UPA.

### III.    Nuisance and Trespass to Chattels Claims

The Court understands Plaintiff's "nuisance" claim to be a private nuisance although not expressly stated in her complaint. New Mexico common law allows a claim for private nuisance, and the Federal Communications Commission states that calls in violation of the TCPA are nuisances. *See Scott v. Jordan*, 1983-NMCA-022, ¶ 11, 99 N.M. 567 ("One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of the land, and the invasion is either: (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities." (citing Restatement (Second) of Torts § 822 D (1979))); and *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) (finding that Congress "was concerned with the nuisance, expense and burden that telephone solicitations place on consumers."). Therefore, Plaintiff can allege the tort of nuisance in her complaint for violation of the TCPA.

Trespass to chattels is the "intentional use or interference with a chattel which is in the possession of another, without justification." *Texas-New Mexico Pipeline Co. v. Allstate Constr.*, 1962-NMSC-026, ¶ 5, 70 N.M. 15 (citation omitted). To be liable for trespass to chattels a defendant must commit an intentional act done for the purpose of interfering with the chattel or with knowledge that his act was reasonably certain to result in an interference with it. *Id.*

---

display the toll-free number for a business." *See* <u>Caller ID Spoofing</u>, Fed. Comm. Commission, https://www.fcc.gov/consumers/guides/spoofing-and-caller-id (last visited Feb. 13, 2019).

The Court determines that Plaintiff has plausibly stated a claim for nuisance and trespass to chattels for the unwanted calls she received from Defendants. Plaintiff stated in her complaint that Defendants made calls to her despite being placed on the National Do Not Call Registry and this caused her a nuisance. Plaintiff has alleged that the calls placed to her cell phone by Defendants "wasted her time, invaded her privacy, disrupted her days, were an obnoxious nuisance and cost her electricity to re-charge her phone." As previously explained, Plaintiff has alleged that the unwanted calls were done knowingly or willfully, and thus, intentionally, and this trespassed her phone. These statements in her complaint indicate a claim for a private nuisance and trespass to chattels. *See Czech v. Wall St. on Demand*, 674 F.Supp.2d 1102, 1122 (D.Minn. 2009) (declining to dismiss cell phone owner's trespass to chattels claim against sender of unwanted text messages); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016) (holding that harms can be concrete and intangible); *Mey v. Got Warranty Inc.*, 193 F.Supp.3d 641, 647 (N.D.W.Va. 2016) (finding that unwanted robocalls cause particularized and concrete harm); and *Jamison v. Esurance Insurance Services, Inc.*, 2016 WL 320646, at *3 (N.D.Tex. Jan. 27, 2016) (finding that plaintiff's allegations that the defendant caused her to incur cellular telephone charges and it invaded her privacy were enough claim TCPA violation).

These are concrete and intangible harms, and the Court finds no reason to dismiss these claims. The allegations set forth in Plaintiff's complaint are enough to claim nuisance and trespass to chattels violations. The Court further notes that Defendants failed to argue this issue as well.

## IV.     Civil Conspiracy and Vicarious Liability Claim

A civil conspiracy is a "combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Seeds v. Lucero*, 2005-NMCA-067, ¶ 12, 137 N.M. 589 (citation and internal quotation marks omitted). "The purpose of a civil

conspiracy claim is to impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members." *Ettenson v. Burke,* 2001-NMCA-003, ¶ 12, 130 N.M. 67.

"The Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016) (citing *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013)). The FCC has clarified that vicarious liability is imposed "under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. at 6574. This includes "a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id.* at 6584. "[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* at 6583. "[W]hile a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of [ ] section 227(b) . . . that are committed by third-party telemarketers." *See id.* at 6574.

Having previously determined that Plaintiff has stated a claim for the other claims stated, Plaintiff has sufficiently alleged vicarious liability and civil conspiracy. The Court can reasonably infer that Mr. Chartrand and Ms. Chartrand directed the Jane Doe defendants to make or initiate the prerecorded messages with an ATDS despite the fact that Plaintiff's phone number was on the National Do Not Call Registry. Plaintiff has sufficiently alleged a combination by two or more

persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means because at the very least Mr. Chartrand and Ms. Chartrand could have conspired against Plaintiff to make these unwanted calls in violation of the TCPA.

The Court also acknowledges the difficulty to assert all the facts necessary with specificity without the appropriate discovery, but Plaintiff has nevertheless stated a plausible claim for vicarious liability and civil conspiracy. *See Hossfeld v. Geico*, 88 F.Supp. 3d 504, 510-511 (D. Md. 2015) (citing *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574). Just as in the other sections, Defendants failed to address this final issue.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Named Defendants' Motion to Dismiss for Failure to State a Claim on which the Court May Grant Relief, **[Doc. 3]**, is **DENIED**.

_____
CHIEF UNITED STATES DISTRICT JUDGE